UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| WARREN S. WRAGG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 4:07-cv-0069-DFH-WGH |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

ENTRY ON JUDICIAL REVIEW

Plaintiff Warren S. Wragg, Jr. applied for disability insurance benefits under the Social Security Act. Acting for the Commissioner, an Administrative Law Judge ("ALJ") determined that Mr. Wragg was not disabled under the Act because he was capable of doing his past work and other jobs existing in significant numbers in the economy. On judicial review, this court remanded for a new hearing. *Wragg v. Barnhart*, 2005 WL 1113919 (S.D. Ind. May 6, 2005). One reason for the remand was that the ALJ did not explain his basis for discounting Mr. Wragg's testimony about his subjective symptoms in a manner sufficient to permit meaningful judicial review. *Id.* at *6. On remand, another ALJ again denied Mr. Wragg's application for disability insurance benefits. Mr. Wragg appeals that denial, contending that the ALJ committed reversible error in failing to provide sufficient basis for his decision to discount Mr. Wragg's credibility regarding his testimony about limitations caused by his sleep apnea and irritable

bowel syndrome, and in failing to analyze Mr. Wragg's statements regarding the duration of some of his daily activities. As explained below, the decision denying benefits is affirmed.

*Background*

Mr. Wragg was born in 1961 and was forty-three years old when the ALJ issued his decision. Mr. Wragg graduated from high school and has taken some college level classes. He has worked as a truck driver, dispatcher, placement counselor for a truck driving school, insurance salesman, industrial cleaner, and valve inspector. He claims that he became disabled on August 22, 2002 as a result of arthritis in his knees, irritable bowel syndrome, sleep apnea, acid reflux disease, and depression.

I.   *Medical Record*

Mr. Wragg developed pain in both his knees, first in his right and then in his left, starting in 1999. He underwent two surgeries of his right knee, one in December 1999 and one in October 2000. R. 131-33, 414. After these surgeries, Mr. Wragg continued to complain of pain in both knees through January 2005, but all clinical exams, x-rays, and MRIs of Mr. Wragg's knees were negative or unremarkable. R. 129, 132-133, 137, 376, 423, 432-33, 558, 560-62, 641, 643, 852. Additionally, in June 2001, Mr. Wragg underwent an upper GI endoscopy that showed mild to moderate gastroesophageal reflux disease ("GERD"). R. 147.

By April 2003 his GERD was stable with medication. R. 224. His records also reflect a history of depression. R. 209, 436, 770-71, 773, 777-78, 809. Mr. Wragg does not challenge the ALJ's opinion related to the condition of his knees, his GERD, or his depression. His pain, discomfort, and other complications caused by these conditions are relevant here only in that these conditions compound the limitations imposed by his other impairments.

Mr. Wragg challenges the ALJ's opinion regarding his irritable bowel syndrome. Mr. Wragg suffered from irritable bowel syndrome as of September 2002, when Dr. Reggie Lydell noted that his condition was slightly worse but stable. R. 144. By April 2003, when Mr. Wragg was evaluated at the Veterans' Administration hospital, he had no concerns or issues regarding his irritable bowel syndrome. R. 224. In September 2003, Mr. Wragg was examined in the VA GI clinic and was prescribed Asacol for diarrhea, which he reported he suffered three times a day. R. 280-81. The next month he told Dr. Arrabella Bowens that he was seeing significant improvement with Asacol. He reported that before the medication, he was having loose stools on a daily basis, but with medication his loose stools were down to three per week. R. 271-72. Then, in December 2003, Mr. Wragg reported to the GI clinic that he still was producing two to three stools per day. R. 268. However, he was not taking fiber. He was advised to start taking fiber and to continue taking Asacol. R. 269.

His complaints continued in March 2004, and Dr. Lesley Campbell prescribed Bentyl for abdominal cramps and instructed him to try a lactose-free diet. R. 634. However, in August 2004, Mr. Wragg reported that he had not tried a lactose-free diet. R. 583. Laboratory tests taken at this visit were negative. R. 578. In August 2005, Dr. Amy Tiu indicated that his clinical presentation did not correlate with his reported symptoms. R. 775.

Mr. Wragg also challenges the ALJ's assessment of limitations caused by his sleep apnea. After a sleep study conducted in October 2003, Mr. Wragg was diagnosed with moderate obstructive sleep apnea and was prescribed a CPAP mask. R. 630-32. He was also instructed to lose weight. R. 632. On August 5, 2004, Mr. Wragg returned to the sleep clinic complaining of frequent sleepy episodes and stating that he had trouble falling asleep. R. 586. It was determined that his difficulties sleeping were caused by his morbid obesity, his depression, and his inadequate sleep hygiene. He returned to the clinic in February 2005 and again in July 2005 with similar complaints. On these visits received the same instructions: he was to continue using his CPAP machine, to reorganize his sleep schedule to stay awake during the day, and to lose weight. R. 778, 808.

II.     *Mr. Wragg's Activities of Daily Living and Pace Questionnaire*

Mr. Wragg completed an Activities of Daily Living and Pace Questionnaire on January 5, 2005. R. 536-538. In the questionnaire, he reported that in a

-4-

typical day, he would get up, eat breakfast, shave, and shower. R. 536. Then he would "play" on the computer, eat lunch, and "play" on the computer some more. Then, he would take a nap, watch television, eat dinner, watch more television, and go to bed. He indicated that on a daily or weekly basis, he was able to cook, drive, read, and dust the house. When he drove, he used a cane to walk to his car and to get into and out of his car. R. 536. He indicated that this process took between one and fifteen minutes. He also wrote that he was able to cook simple meals like soup or a sandwich, and that this process took between fifteen and thirty minutes. R. 536. He reported that he could not sit still for extended periods or his knees became painful and stiff, and that he needed help getting up from the couch. R. 536-37. He stated that he did not like being around people and often fell asleep while visiting or waiting for appointments. He reported that he was able to be on time for appointments, particularly at the VA Hospital, where his appointment would be rescheduled if he were late. R. 538. He was able to shower at a normal pace but was slower at getting dressed, making beds, cooking, dusting, laundry, grocery shopping, and yard work. R. 539.

III.   *Testimony at the Hearing*

Upon remand from this court, a hearing was held before a different ALJ on September 27, 2005. Mr. Wragg testified that he had last worked in 2002 and had stopped working because was suffering from chronic knee pain, chronic diarrhea, and sleep apnea. R. 859-60. He found that he was not able to get in or out of his truck or to climb on the truck deck to secure loads because of the condition of his knees, that because of the uncontrollable diarrhea he was forced to stop the truck for bathroom breaks, and that he was falling asleep while driving. R. 859-60.

Mr. Wragg estimated that he was diagnosed with sleep apnea in 1993 or 1994 but said that he had a problem with falling asleep since childhood. R. 861. When he sat still or remained inactive for a period of time, he would fall asleep, or be drowsy at best. R. 861. While working as a truck driver, he was permitted to sleep several times a day so he did not doze off as much. R. 861. Even so, he sometimes drove for "miles and miles" without "remember[ing] a landmark on it." R. 863. When he was no longer able to work as a truck driver, he complained that he fell asleep a lot because he sat still much of the time. R. 862. To treat his sleep apnea, he used a CPAP machine and had a prescription for a sleep medication but still had an erratic sleep schedule. R. 862. Also, Mr. Wragg took his medication only occasionally because it gave him a "sleep hangover." R. 863. With treatment, he still needed to take three or four naps a day for one to two

hours each.  R. 863.  He testified that he was unable to go without sleep for any eight-hour time period.  R. 863.

He testified that he was first diagnosed with irritable bowel syndrome in 1990 or 1991.  R. 864.  He testified that he had diarrhea from three to eight times a day, every day, and with each bout would spend anywhere between five and forty minutes in the bathroom.  R. 864.  He was unable to control when the diarrhea would strike or how long the bout would last, and suffered a lot of stomach cramping prior to and after having a bowel movement.  R. 864-65.  He attempted to control this condition with Atropine and Immodium but testified that there was no treatment for irritable bowel syndrome.  R. 864-65.

At the time of the hearing, Mr. Wragg estimated that he weighed 285 pounds.  R. 867.  Since he had stopped working, he had gained approximately 55 pounds because he had "self-medicated" by eating a lot.  R. 867.  He estimated that he ingested between fifteen to twenty pills every day to treat his various conditions.  R. 867.

Mr. Wragg testified that he would not be able to work in a job that required him to be on his feet for eight hours a day, such as a light janitorial position.  R. 867.  He also testified that he would be unable to hold a job requiring him to sit for long periods of time because his legs would fall asleep and he would fall asleep.  R. 867.  Because he had so much difficulty sleeping at night, he was unable to

predict when he would be able to attend work. R. 868. Also, in any job, he testified that he would need to be allowed to use a bathroom at will for as long as might be necessary, which might amount to thirty to forty minutes several times a day. R. 868.

A vocational expert, Dr. Stephanie Barnes, also testified at the hearing. R. 871-79. She testified that Mr. Wragg's relevant work history showed that he had worked as a truck driver, a dispatcher, a placement counselor for a truck driving school, an insurance salesperson, an industrial cleaner, and a valve inspector. R. 872. She testified further that a hypothetical individual of Mr. Wragg's age, educational and vocational background, who had the residual functional capacity to perform sedentary work with a sit/stand option, and that would not require climbing ladders, ropes or scaffolds or crawling, would require occasional balancing, stooping, kneeling, and crouching, and would not require working around hazardous conditions, would be able to perform Mr. Wragg's past relevant jobs of dispatcher/office assistant and placement counselor. R. 873. The Department of Labor classifies the dispatcher/office assistant position as light work and the placement counselor position as sedentary work. R. 873-74.

The vocational expert testified that someone of Mr. Wragg's age and educational and vocational background, and with the limitations the ALJ described in his hypothetical, could also perform work as an information clerk, security monitor, or clerical addresser. R. 874. The vocational expert testified

that there were 1,700 information clerk positions available in the state of Indiana and 204,000 such positions in the national economy, that there were 2,100 security monitor positions available in Indiana and 111,000 such positions in the national economy, and that there were 2,750 clerical addresser jobs available in the state of Indiana and 217,000 clerical addresser positions in the national economy.  R. 874-75.  The vocational expert estimated that individuals working as information clerks and security monitors might deal with the public about half of their work time and that individuals working as clerical addressers would hardly ever encounter the public.  R. 876.

The vocational expert testified that if the same hypothetical individual needed to be absent from work an average of one day per week, no jobs would be available.  R. 876.  Also, for most jobs, it would be imperative that the employee be at the work site for the majority of the work period.  R. 876.  The vocational expert testified that if Mr. Wragg's testimony regarding the frequency and discomfort associated with his irritable bowel syndrome, fatigue, and body pain were fully credited, his ability to do any of the jobs she had described would be affected.  R. 878.

IV. *Framework for Determining Disability and the Standard of Review*

To be eligible for the disability insurance benefits he seeks, Mr. Wragg must establish that he suffered from a disability within the meaning of the Social Security Act. To prove disability under the Act, the claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Mr. Wragg was disabled only if his impairments were of such severity that he was unable to perform work that he had previously done and if, based on his age, education, and work experience, he also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to him in his immediate area, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A).

This standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

To determine whether Mr. Wragg was disabled under the Social Security Act the ALJ followed the familiar five-step analysis set forth in 20 C.F.R. § 404.1520. The steps are as follows:

(1) Has the claimant engaged in substantial gainful activity? If so, he was not disabled.

(2) If not, did the claimant have an impairment or combination of impairments that are severe? If not, he was not disabled.

(3) If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If so, the claimant was disabled.

(4) If not, could the claimant do his past relevant work? If so, he was not disabled.

(5) If not, could the claimant perform other work given his residual functional capacity, age, education, and experience? If so, then he was not disabled. If not, he was disabled.

See generally 20 C.F.R. § 404.1520. When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

The ALJ found that Mr. Wragg satisfied step one. He had not engaged in any substantial gainful activity at any time relevant to the ALJ's decision. R. 466. At step two, the ALJ found that Mr. Wragg had the following severe impairments: osteoarthritis with chronic pain in both knees, irritable bowel syndrome, obstructive sleep apnea, obesity, and depression. R. 467. These impairments did not meet or equal any of the listings that would have automatically qualified Mr. Wragg for benefits at step three. R. 467. At step four, the ALJ determined that

-11-

Mr. Wragg was able to perform his past relevant work as a dispatcher, office assistant, and placement counselor. R. 467.

Though it was unnecessary to proceed to the fifth step, the ALJ did so. At step five, the ALJ determined that Mr. Wragg retained the residual functional capacity to perform sedentary unskilled, semi-skilled, and skilled work with a number of limitations. R. 466-67. Based on the testimony of the vocational expert, the ALJ found that a person with Mr. Wragg's residual functional capacity would have been able to work in other jobs such as a security monitor and a clerk addresser, and that there were 4,850 such jobs in Mr. Wragg's local economy and 328,000 such jobs available in the national economy. R. 466. The ALJ therefore denied benefits.

The Social Security Act provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). Because the Appeals Council denied further review of the ALJ's findings, the ALJ's findings are treated as the final decision of the Commissioner. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). If the Commissioner's decision is both supported by substantial evidence and based on the proper legal criteria, it must be upheld by a reviewing court. 42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), citing *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d

300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of the conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

*Discussion*

I.   *Assessment of Mr. Wragg's Credibility*

The ALJ's decision must be based upon consideration of all the relevant evidence, and the ALJ must articulate at some minimal level his analysis of the evidence so that the court can trace adequately the path of the ALJ's reasoning. *Diaz*, 55 F.3d at 307-08. Meaningful review requires that the ALJ build a logical bridge between the evidence and the ALJ's conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Sarchet v. Chater*, 78 F.3d at 307. Mr. Wragg

contends that, on remand, the ALJ failed to build such a bridge in assessing credibility concerning limitations caused by his sleep apnea and irritable bowel syndrome. Wragg Br. at 9.

The ALJ is required to consider statements of the claimant's symptoms and how they affect his daily life and ability to work. 20 C.F.R. § 404.1529(a). However, neither the ALJ nor this court is "required to give full credit to every statement of pain, and require a finding of disabled every time a claimant states that [he] feels unable to work." *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996); accord, 20 C.F.R. § 404.1529(d). Instead, there is a two-part test for determining whether a claimant's complaints contribute to a finding of disability. First, the claimant must provide objective medical evidence of an impairment or combination of impairments that could be expected to produce the symptoms the claimant alleges. 20 C.F.R. § 404.1529(a)-(b). Second, the ALJ must consider the intensity and persistence of the alleged symptoms. The ALJ considers the claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other evidence of the following factors:

(1) The claimant's daily activities;

(2) Location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) Type, dosage, effectiveness, and side effects of any medication;

> (5) Treatment, other than medication, for relief of pain or other symptoms;
>
> (6) Other measures taken to relieve pain or other symptoms;
>
> (7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Having considered these factors, which are intended to either corroborate or discredit the claimant's subjective complaints, the ALJ may make a reasoned credibility determination based upon the evidence about whether the claimant acts, day in and day out, like a person would act who is really suffering from the symptoms the claimant alleges. It is not necessary for the ALJ to mechanically recite findings on each factor, but the ALJ must give reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers will have a fair sense of how the claimant's testimony was assessed. See Social Security Ruling 96-7p, printed in 61 Fed. Reg. 34483, 34486 (July 2, 1996); see also *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (ALJ must comply with Social Security Ruling 96-7p in making a credibility determination by articulating the reasons behind the determination). The court will not set aside an ALJ's credibility determination if there is some support in the record unless it is "patently wrong." *Luna*, 22 F.3d at 690; *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

Here, the ALJ adequately supported his determination that Mr. Wragg's subjective complaints were "not entirely credible." He determined that, while Mr. Wragg had impairments that could be expected to produce some discomfort and functional limitations, the objective evidence did not support his description of the severity and chronic nature of his symptoms. R. 463. With regard to his irritable bowel syndrome, the ALJ considered that in April 2003, Mr. Wragg reported that he had no concerns or issues with that condition. Then, in September, although he reported diarrhea three times daily, he improved significantly with medication. The ALJ also noted that in September 2004 it was recommended that he try a lactose-free diet, but Mr. Wragg did not follow this suggestion. R. 464. The ALJ then reviewed the objective medical evidence pertaining to Mr. Wragg's sleep apnea, finding that the available evidence did not support Mr. Wragg's contentions regarding limitations caused by that condition. R. 464. The record showed that Mr. Wragg's sleep apnea was controlled with the CPAP machine and that his problems with fatigue were not caused by that condition but were instead a result of his own poor sleep habits and obesity. R. 464-65. The ALJ also relied on his observation of Mr. Wragg's composure at the hearing, stating that Mr. Wragg did not appear to be in any obvious discomfort while walking into or out of the hearing or while sitting. R. 465. On the whole, the ALJ's decision to discount Mr. Wragg's credibility was adequately articulated and rests on sufficient grounds. The court finds no error.

Mr. Wragg also believes that, in discussing his weight gain in spite of repeated advice from his many medical providers that he lose weight, the ALJ was "chiding" him. Wragg Br. 10. "Chiding" would be inappropriate, but in this instance, it appears that the ALJ simply provided an accurate recitation of what the record reflects regarding Mr. Wragg's weight over the years. R. 464-65. The evidence was relevant to several impairments. The ALJ did not engage in inappropriate commentary on this topic.

II.   *Mr. Wragg's Ability to Sustain Activities*

Mr. Wragg contends that the ALJ erred in considering his statements regarding his daily activities without also taking into account the limited amount of time that he could sustain those activities. Wragg Br. 14. In his functional limitation report, Mr. Wragg stated that he was able to get dressed, make a bed, cook, dust, do laundry, shop for groceries, and do yard work, but that he performed these activities more slowly than normal. R. 539. He indicated that it took him between one and fifteen minutes to walk to and get in his car, and it took him between fifteen and thirty minutes to prepare a simple meal. R. 536. Mr. Wragg argues that the ALJ failed to consider that the duration of Mr. Wragg's activities is limited, pointing to Mr. Wragg's assertions in his functional limitation report. Wragg Br. 14. Mr. Wragg's assertion does not find factual support in the record, however, and the court does not find that the ALJ committed error in this regard.

*Conclusion*

For the foregoing reasons, the court finds that the ALJ's decision denying benefits is supported by substantial evidence. Accordingly, the decision is affirmed and final judgment will be entered.

So ordered.

Date:  July 25, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Timothy Reidinger
timreidinger@sbcglobal.net, timreidinger@insightbb.com

Tom Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov, tracy.jones@usdoj.gov, lin.montigney@usdoj.gov